UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANGELA BALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:24-cv-126-AMM |
| ) | |
| TRANS UNION, LLC, and ) | |
| ZIONS DEBT HOLDINGS, LLC, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the court on the motion of Defendant Trans Union, LLC for judgment on the pleadings. Doc. 17. The motion is fully briefed. Docs. 25, 28. For the reasons below, the motion is **GRANTED**.

I.   **FACTUAL ALLEGATIONS**

Plaintiff Angela Ball alleges that Trans Union violated the Fair Credit Reporting Act (FCRA) by reporting a debt she did not owe. Doc. 1 ¶¶ 11–12. The contested debt arose from a security monitoring subscription Ms. Ball purchased from Brinks for $29.97 per month in 2019. *Id.* ¶ 55. Ms. Ball canceled her subscription in April 2021. *Id.* ¶ 56. While Ms. Ball believed she paid her final balance on April 7, 2021, she had a remaining balance of $35.97. *Id.* ¶¶ 57–58. On May 6, 2021, Brinks terminated Ms. Ball's service and charged off the remaining balance. *Id.* ¶¶ 59–60.

In January 2023, Defendant Zions, a debt collection agency, sent Ms. Ball a collection letter regarding the balance of her Brinks account. *Id.* ¶¶ 23, 61. The collections letter stated Ms. Ball owed Brinks at total of $104.71, which consisted of the principal amount of $35.97, $8.74 in interest, and $60.00 in fees. *Id.* ¶ 62. While Ms. Ball acknowledges she owed $35.97 on the Brinks account upon closure, she states she does not owe the $8.74 in interest or the $60 in fees to Brinks. *Id.* ¶¶ 63–64. Ms. Ball maintains "no law or contract applies to permit Zions to collect" charges other than the $35.97 Ms. Ball owed Brinks. *Id.* ¶ 65. In February 2023, Zions again attempted to collect $104.71 by sending Ms. Ball an itemized invoice. *Id.* ¶¶ 67–68.

Following the collection attempts of Zions, Ms. Ball obtained her credit reports from Trans Union, Experian, and Equifax. *Id.* ¶ 79. The credit bureaus each reported a collection account opened by Zions with a balance of $104.00 and noted that Brinks was the original creditor. *Id.* In June 2023, Ms. Ball disputed the account with Trans Union. *Id.* ¶ 85. In her correspondence with Trans Union, Ms. Ball stated the amount owed to Brinks was inaccurate and asked Trans Union to reinvestigate the disputed information and correct her credit report. *Id.* ¶¶ 86–87.

Ms. Ball alleges that shortly after she disputed the debt, Trans Union sent an automated credit dispute verification letter to Zions. *Id.* ¶ 93. On July 5, 2023, Trans Union responded to Ms. Ball's dispute that "they have verified the disputed contents

to be accurate." *Id.* ¶ 96. Trans Union did not alter or delete the disputed debt from Ms. Ball's credit report. *Id.* ¶ 97. On November 17, 2023, Ms. Ball contacted Trans Union for a second time to dispute the account. *Id.* ¶ 124. She provided Trans Union her Brinks account statement and identifying documents and requested Trans Union reinvestigate the reported debt and correct her credit report reflecting the inaccuracy. *Id.* ¶¶ 126–127.

Ms. Ball alleges that Trans Union sent Zions a second automated credit dispute verification following her second dispute. *Id.* ¶ 128. Trans Union responded by "indicating an update had been made, but still continued to inaccurately report the Account as a collection with $104 owed." *Id.* ¶ 131. Ms. Ball contends that due to Trans Union's inaction regarding her dispute, it failed to conduct a reasonable investigation or reinvestigation in violation of 15 U.S.C. § 1681i(a)(1)(A). *Id.* ¶¶ 98, 133.

Ms. Ball filed this action on February 2, 2024, alleging two violations of the Fair Credit Reporting Act. Doc. 1. Count One alleges Trans Union violated 15 U.S.C. § 1681e(b) "by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff." *Id.* ¶ 168. Count Two alleges Trans Union violated 15 U.S.C. § 1681i(a)(5)(A) because it "failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false,

3

logically inconsistent, and damaging information to remain in Plaintiff's credit file." *Id.* ¶ 175. Ms. Ball states that due to Trans Union's inactions, she "suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials." *Id.* at 26.

## II.   STANDARD OF REVIEW

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001); Fed. R. Civ. P. 12(c). A court must analyze a motion on the pleadings like a motion to dismiss by "accept[ing] the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Cannon*, 250 F.3d at 1301.

To survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up); *see also Losey v. Warden*, 521 F. App'x 717, 719 (11th Cir. 2013) (applying the plausibility standard in *Iqbal* on an appeal of a judgment on the pleadings). "[W]hen the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," a claim is plausible. *Iqbal*, 556 U.S. at 678.

### III.   ANALYSIS

Under federal law, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). When a consumer believes a consumer report contains an error, federal law provides procedures for a consumer reporting agency to investigate and remedy the consumer's report. 15 U.S.C. § 1681i(a)(1)(A). Such agency "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." *Id*. Following reinvestigation, if an agency finds that the information is inaccurate, it shall "promptly delete that item of information from the file of the consumer, or modify that item of information" and "promptly notify the furnisher of that information that the information has been modified or deleted" from the consumer's file. 15 U.S.C. § 1681i(a)(5)(A)(i)–(ii).

To state a claim under Section 1681e, "the plaintiff must show that the agency's report contained factually inaccurate information." *Losch v. Nationstar*

5

*Mort. LLC*, 995 F.3d 937, 944 (11th Cir. 2021). A credit reporting agency, such as Trans Union, has no duty to investigate "legal disputes about the validity of the underlying debts they report." *Id*. at 946 (cleaned up).

Likewise, a Section 1681i claim "is properly raised when a particular credit report contains a factual deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry." *Batterman v. BR Carroll Glenridge, LLC,* 829 F. App'x 478, 481 (11th Cir. 2020) (cleaned up). "To establish a violation of either of these FCRA provisions, the consumer must present evidence tending to show that the agency prepared a report containing inaccurate information." *Middlebrooks v. Equifax, Inc.*, No. 23-11086, 2024 WL 631000, at *6 (11th Cir. Feb. 15, 2024).

In *Batterman*, the Eleventh Circuit assessed whether the inclusion of liquidated damages constituted a factual inaccuracy. *See generally Batterman*, 829 F. App'x 478. After the termination of a lease, a landlord attempted to collect liquidated damages against Batterman. *Id*. at 479. When the debt was not removed from Batterman's credit report after he notified the credit reporting agencies of the dispute, Batterman asserted an FCRA claim against the agencies. *Id.* Batterman's complaint focused on the inclusion of liquidated damages and his allegation that he did not owe liquidated damages. *Id*. at 481.

The *Batterman* court observed that if a plaintiff fails to make factual allegations "that an item of information in a credit report is inaccurate or incomplete[,] . . . he has, as a matter of law, not established a violation of § 1681i(a)." *Id*. at 481. Because the complaint did not allege an inaccuracy in the amount reported to the credit agencies, the court reasoned that the inclusion of the liquidated damages was a contractual dispute rather than a factual inaccuracy. *Id*. Ultimately, the court affirmed judgment on the pleadings because "[s]uch contractual disputes require resolution by a court of law, not a credit reporting agency." *Id.* at 481–82.

Trans Union argues that it is entitled to judgment on the pleadings because Ms. Ball fails to allege a factual inaccuracy. Doc. 17 at 5–10. Ms. Ball responds that "[w]hether the alleged inaccuracy is factual or legal is beside the point. Instead, what matters is whether the alleged inaccuracy was objectively and readily verifiable." Doc. 25 at 4–5 (cleaned up). She cites *Holden v. Holiday Inn Club Vacations, Inc.*, 98 F.4th 1359 (11th Cir. 2024). But that reliance is misplaced. The *Holden* court analyzed the duties of furnishers under the FCRA and did not examine the duties of credit reporting agencies. *Id*. at 1369. Here, the furnisher is Zions, not Trans Union. *Holden* thus does not control Trans Union's obligations.

Here, as in *Batterman*, Ms. Ball is asking Trans Union to resolve a legal dispute regarding the validity of the disputed debt, and she has not asserted a factual inaccuracy. In both her complaint and opposition to this motion, Ms. Ball alleges

7

that Zions did not have legal authority to collect late fees or interest. Doc. 1 at 11; Doc. 25 at 2. But that is not for Trans Union to decide or resolve. Like in *Batterman*, Ms. Ball's "claims are not that [Trans Union] reported any factually incorrect information in [her] credit report, but rather, that they failed to accept [her] interpretation" that she did not owe fees or interest to Brinks. *Batterman*, 829 F. App'x at 481. Trans Union could not have resolved the issue whether Ms. Ball owed fees and interest to Brinks, or whether Zions had a legal right to collect that debt, until a court resolved the contractual issues.

## IV. CONCLUSION

Because Ms. Ball fails to allege a factual inaccuracy, the court finds that the complaint fails to state a claim for relief under the FCRA and that amendment would be futile. Accordingly, Defendant Trans Union's Motion for Judgment on the Pleadings, Doc. 17, is **GRANTED** and the claims against Defendant Trans Union, LLC are **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this 21st day of March, 2025.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE