UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ANGELA BALL,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2:24-cv-00126-AMM |
| | ) |
| **ZIONS DEBT HOLDINGS, LLC,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

This case is before the court on plaintiff Angela Ball's motion for default judgment. Doc. 42. For the reasons explained below, the motion is **GRANTED**, and default judgment is **ENTERED** in favor of Ms. Ball and against defendant Zions Debt Holdings, LLC.

### I.   BACKGROUND

This dispute arises from Zions's alleged attempts to collect a debt from Ms. Ball. In her complaint, Ms. Ball alleges the following facts:

In April 2019, Ms. Ball "obtained a Brinks . . . subscription which provided her with security monitoring services." Doc. 1 ¶ 55. In April 2021, Ms. Ball "canceled her subscription" and "believed she made her final payment" but "had a balance of $35.97 remaining." *Id*. ¶¶ 56–58. In May 2021, "Brinks terminated [Ms. Ball's] services" and "charged off the $35.97 balance." *Id*. ¶¶ 59–60.

"On January 12, 2023, Zions [a credit grantor, furnisher, and debt collector] sent [Ms. Ball] a collection letter[,]" which "indicated [that Ms. Ball] owed an alleged debt to Brinks totaling $104.71." *Id*. ¶¶ 24–25, 61–62. "The letter itemized a principal amount of $35.97, $8.74 in interest, and $60 in fees." *Id*. ¶ 62. Ms. Ball alleges that when she "closed her account with Brinks, she owed $35.97" and "did not owe $8.74 in interest or $60 in fees." *Id*. ¶¶ 63–64.

"On February 1, 2023, [Zions] sent [Ms. Ball] an invoice[,]" attempting to collect "$35.97, $8.74 in interest, and $60 in fees." *Id*. ¶¶ 67–68. In its communications to Ms. Ball, "Zions implied it ha[d] the right to collect the Debt." *Id*. ¶ 73. Ms. Ball "was shocked and confused when Zion[]s repeatedly tried to collect an amount approximately three times the amount [Ms. Ball] actually owed on the Debt." *Id*. ¶ 76 (cleaned up). Ms. Ball alleges that "no law or contract applies to permit Zions to collect charges in addition to the $35.97 amount owed to Brinks at the time the account closed." *Id*. ¶ 65. She further alleges that "Zions knew or should have known that . . . Brinks charged off [Ms. Ball's] account and therefore, [Ms. Ball] did not owe more than $35.97." *Id*. ¶ 66.

"[O]n May 26, 2023," Ms. Ball "obtained her Trans Union, Experian, and . . . Equifax credit reports" "and learned that the Credit Bureau[s] . . . inaccurately

2

reported the Zions Account . . . as a collection account with an owed balance of $104.00." *Id.* ¶ 79. Ms. Ball alleges that "Zions reported to the Credit Bureau[s] . . . that [she] owed $104.00 to . . . Zions." *Id.* ¶ 82. In June 2023, Ms. Ball disputed the Account with Trans Union and Experian, *see id.* ¶¶ 85, 99 and both credit bureaus sent Zions an automated credit dispute verification ("ACDV"), *see id.* ¶¶ 93, 103.

Ms. Ball alleges that "Zions received the . . . ACDVs and failed to conduct a reasonable investigation with respect to the information disputed by [Ms. Ball]." *Id.* ¶ 120. She alleges that "Zions failed to review all relevant information provided by the Credit Bureau[s,]" "fail[ed] to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable," and "verified the disputed information as accurate to the Credit Bureau[s]." *Id.* ¶¶ 121–23.

"On July 4, 2023, Zions sent [Ms. Ball] a text message to her cell phone[,]" which "stated [that] Zions purchased her Brinks alarm, and that she could resolve the account for full deletion from the[] credit agencies if she paid the alleged $104.71 owed balance." *Id.* ¶¶ 89–90 (cleaned up). Ms. Ball alleges that she "previously closed and paid off her account and therefore is not liable for $104.00 owed to Brinks[,]" and "Zions knew or should have known that [Ms. Ball] . . . owe[d no] more than $35.97." *Id.* ¶¶ 91–92.

3

In November 2023, Ms. Ball again disputed the account with Trans Union and Experian. *See id.* ¶¶ 124, 134. The Credit Bureaus sent ACDVs to Zions, *see id.* ¶¶ 128, 138, but Ms. Ball alleges that Zions again "failed to conduct a reasonable investigation[,]" "failed to review all relevant information provided by the Credit Bureau[s,]" "fail[ed] to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable[,]" and "verified the disputed information as accurate to the Credit Bureau[s]." *Id.* ¶¶ 144–47.

"On January 5, 2024, Zions sent [Ms. Ball] a text message to her cell phone[,]" which "stated [that] Zions purchased her Brinks alarm, and that she could resolve the account for full deletion from the[] credit agencies if she [contacted them] for instructions on how to pay the alleged debt." *Id.* ¶¶ 148–49 (cleaned up). In this text message as well as previous communications, Ms. Ball alleges that "Zions implied it ha[d] the right to collect the Debt" and "the right to report this information to the Credit Reporting Agencies," *id.* ¶ 152, even though these "were actions that could not legally be taken against [her,]" *id.* ¶ 154.

Ms. Ball alleges that Zions's "collection of an amount not owed by [Ms. Ball] was deceptive, misleading, unfair, [and] unconscionable." *Id.* ¶ 153. She alleges that "Zions continued to furnish data to the national credit bureaus, inaccurately reporting

4

the amount [Ms. Ball] owed to . . . Zions in relation to the Brinks account[,]" making "it almost impossible for [her] to continue obtaining credit." *Id*. ¶¶ 157, 159. Ms. Ball alleges that "[a]s a direct result of Zion[s]'s actions, [she] has suffered interference with daily activities and emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational harm, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety." *Id*. ¶ 156.

## II.  PROCEDURAL HISTORY

On February 2, 2024, Ms. Ball filed an action asserting four claims against Zions alleging violations of the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §§ 1681s-2(b), 1692e(2)(A), 1692e(5), 1692e(10), and 1692f. Doc. 1 ¶¶ 176–211. She sought "actual, statutory, and punitive damages as provided by the FCRA[,]" "reasonable attorneys' fees and costs as provided by the FCRA[,]" a "[d]eclaratory judgment that . . . Zions violated the FDCPA[,]" "[a]ctual damages against . . . Zions pursuant to 15 U.S.C. § 1692k(a)(1)[,]" "[i]njunctive relief prohibiting . . . Zions'[s] continued abusive debt collection conduct in violation of the FDCPA[,]" "[s]tatutory damages . . . against . . . Zions [pursuant] to 15 U.S.C. § 1692k(a)(2)[,]" and "[c]osts and

5

reasonable attorney's fees against . . . Zions pursuant to 15 U.S.C. § 1692k(a)(3)." Doc. 1 at 32.

On June 13, 2024, Zions was served, *see* Doc. 34, but failed to timely respond to Ms. Ball's complaint, *see* Doc. 37. On August 8, 2024, Ms. Ball moved for a clerk's entry of default, *id.*, which was granted on the same day, Doc. 38. On September 12, 2024, Ms. Ball filed this motion for default judgment. Doc. 42.

## III. LEGAL STANDARD

After an entry of default, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "Entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered," which means that "the complaint [must] contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (cleaned up). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." *Id.* "When a defendant defaults, [it] admits the plaintiff's well-pleaded allegations of fact." *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015) (cleaned up).

## IV. ANALYSIS

### A. FCRA Claim

The FCRA imposes a duty upon furnishers—"people or organizations that give consumer information . . . to . . . reporting agencies"—to "conduct a 'reasonable investigation'" "[u]pon receipt of a dispute." *Milgram v. Chase Bank USA, N.A.*, 72 F.4th 1212, 1217–18 (11th Cir. 2023); *see also* 15 U.S.C. § 1681s-2(a)–(b). Once the investigation is complete, a furnisher may "(1) verify the information as accurate; (2) determine that the information is wrong or incomplete, or (3) determine that the information cannot be verified." *Milgram*, 72 F.4th at 1218; *see also* 15 U.S.C. § 1681s-2(b)(1)(D)–(E). While "consumers cannot sue furnishers for providing inaccurate information[,]" they can sue "for conducting unreasonable investigations." *Milgram*, 72 F.4th at 1218; *see also Felts v. Wells Fargo Bank*, 893 F.3d 1305, 1312 (11th Cir. 2018).

Ms. Ball sued Zions for violating Section 1681s-2(b) of the FCRA, *see* Doc. 1 ¶¶ 176–181, alleging that "Zions is a credit grantor and 'furnisher' of consumer information," and that it erroneously "reported to the Credit Bureau[s] that [she] owed $104.00 to . . . Zions," *id.* ¶¶ 24, 82. She alleges that the credit bureaus sent notice of her dispute to Zions through ACDVs on two separate occasions. *See id.* ¶¶ 93, 103, 128, 138. She further alleges that on both occasions, Zions "failed to

7

conduct a reasonable investigation with respect to the information disputed by [Ms. Ball,]" "failed to review all relevant information provided by the Credit Bureau[s] . . . regarding [her] dispute[,]" "fail[ed] to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable[,]" and "verified the disputed information as accurate to the Credit Bureau[s]." *Id.* ¶¶ 120–23, 144–47. She finally alleges that "Zions knew or should have known that . . . Brinks charged off [Ms. Ball's] account and . . . [that she] did not owe more than $35.97." *Id.* ¶¶ 66, 72, 92, 151. The court finds these allegations sufficient to state a claim that Zions is a furnisher that failed to conduct a reasonable investigation into the information disputed by Ms. Ball in violation of the FCRA.

### B. FDCPA Claims

The FDCPA applies to "debt collectors," defined as those "who use[] any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or those "who regularly collect[] or attempt[] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); *see also Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278, 1285 (11th Cir. 2025). To state an FDCPA claim, the plaintiff must plausibly allege sufficient facts for the court to draw a reasonable inference

8

that the defendants meet the FDCPA's definition of "debt collector." *See Davidson v. Cap. One Bank (USA)*, 797 F.3d 1309, 1316–17 (11th Cir. 2015). Ms. Ball satisfies this standard by alleging in her complaint that Zions "is a collections agency" that "regularly collects or attempts to collect debts owed or due or asserted to be owed or due another[,]" "regularly uses the telephone and mail to engage in the business of collecting debts and/or alleged debts from consumers in Alabama[,]" and was attempting to collect "an alleged debt [owed] to Brinks." Doc. 1 ¶¶ 23, 25, 62, 68.

Ms. Ball alleges that Zions violated sections 1692e(2)(A), 1692e(5), 1692e(10), and 1692f of the FDCPA. *See id*. ¶¶ 182–211.

Under Section 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. A debt collector violates this section by "false[ly] represent[ing] . . . the character, amount, or legal status of any debt." *Id*. § 1692e(2)(A). Ms. Ball alleges that when she "closed her account with Brinks, she owed $35.97." Doc. 1 ¶ 63. She "did not owe $8.74 in interest or $60 in fees." *Id*. ¶ 64. She further alleges that "no law or contract applies to permit Zions to collect charges in addition to the $35.97 amount owed to Brinks at the time the account closed," and "Zions knew or should have known that [Ms. Ball] . . . did not owe more than $35.97." *Id*. ¶¶ 65–66.

9

Ms. Ball alleges that nevertheless, Zions attempted to collect $104.71 on four separate occasions. *See id.* ¶¶ 61–77, 89–92, 148–155. The court finds these allegations sufficient to state a claim that Zions "false[ly] represent[ed] . . . the . . . amount . . . of . . . debt" owed by Ms. Ball in violation of the FDCPA. *See* 15 U.S.C. § 1692e(2)(A).

Under Section 1692e(5), "[a] debt collector may not . . . threat[en] to take any action that cannot legally be taken or that is not intended to be taken." *Id.* § 1692e(5). Ms. Ball alleges that Zions "implied [in its communications to Ms. Ball that] it ha[d] the right to collect . . . [$104.71] from [her]" and "the right to report this information to the Credit Reporting Agencies" even though Ms. Ball "did not owe more than $35.97." Doc. 1 ¶¶ 151–52. She alleges that "Zions' repeated attempt[s] to collect an amount approximately three times the amount owed by [Ms. Ball]" constitute "actions that could not legally be taken." *Id.* ¶¶ 75, 154–55 (cleaned up). By alleging that Zions attempted to collect on a nonexistent debt, the court finds that Ms. Ball sufficiently stated a claim that Zions "threat[ened] to take an[] action that cannot legally be taken" in violation of the FDCPA. *See* 15 U.S.C. § 1692e(5).

Under Section 1692e(10), "[a] debt collector may not . . . use . . . any false representation or deceptive means to collect or attempt to collect any debt or to

10

obtain information concerning a consumer." *Id.* § 1692e(10). Ms. Ball alleges that Zions "implied [in its communications to Ms. Ball that] it ha[d] the right to collect . . . [$104.71] from [her]" and "the right to report this information to the Credit Reporting Agencies" even though she "did not owe more than $35.97[,]" a fact Ms. Ball alleges "Zions knew or should have known." Doc. 1 ¶¶ 66, 72, 92, 151–52. The court finds these allegations sufficient to state a claim that Zions used deceptive means to collect a debt from Ms. Ball in violation of the FDCPA. *See* 15 U.S.C. § 1692e(10).

Under Section 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f. The court finds Ms. Ball's allegations that Zions (1) attempted to "[c]ollect[] an amount for a debt from [Ms. Ball] that was not owed[] and was therefore not due and owing or legally collectible[,]" (2) "[m]isle[d Ms. Ball] as to the validity of the debt[,]" (3) "[m]isl[ed Ms. Ball] as to the consequence of failing to pay the debt[,]" and (4) attempted "to coerce, pressure and/or deceive [Ms. Ball] into paying money that [she] did not in fact owe[,]" sufficient to state a claim that Zions "use[d] unfair . . . means to . . . attempt to collect [this] debt" in violation of the FDCPA. Doc. 1 ¶ 208; *see also* 15 U.S.C. § 1692f.

11

## C. Relief

Ms. Ball alleges that Zions' violations were "willful." *See* Doc. 1 ¶ 180. Unlike the FDCPA, the FCRA categorizes violations based on intent. *See* 15 U.S.C. §§ 1681n, 1692k. To state a claim for "a willful violation [of the FCRA], a [plaintiff] must [allege] that [the furnisher] either knowingly or recklessly violated the requirements of the Act." *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009). "To [allege] a reckless violation, a [plaintiff] must establish that the action of the agency is not only a violation under a reasonable reading of the statute's terms, but shows that the [furnisher] ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. (cleaned up).

Ms. Ball alleges that Zions erroneously verified the disputed information from the credit bureaus as accurate upon two separate investigations even though it "knew or should have known that [Ms. Ball] . . . did not owe more than $35.97." Doc. 1 ¶¶ 66, 72, 92, 151. She further alleges that Zions "failed to conduct a reasonable investigation with respect to the information disputed by [Ms. Ball,]" "failed to review all relevant information provided by the Credit Bureau[s] regarding [her] dispute[,]" and "fail[ed] to modify, delete, or permanently block the disputed

12

information that was inaccurate, incomplete or unverifiable." *Id.* ¶¶ 120–23, 144–47. The court finds these allegations sufficient to state a claim that Zions's actions were not "merely careless" but "willful." *See Levine*, 554 F.3d at 1318.

For willful violations of the FCRA, in addition to punitive damages, "plaintiffs may elect to receive actual damages *or* statutory damages, but not both . . . ." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1313 (11th Cir. 2009). Statutory damages may not be "less than $100" or "more than $1,000." 15 U.S.C. § 1681n(a)(1)(A). Ms. Ball sought "actual, statutory, and punitive damages[,]" and had two opportunities to submit evidence to substantiate the amount of her actual damages. *See* Doc. 1 at 32; Doc. 45; Doc. 49. Ms. Ball's evidentiary submissions included a declaration from Ms. Ball, communications from Zions, personal credit reports, communications from TransUnion, and a declaration from Frances Mansell, Ms. Ball's mother. *See* Doc. 48; Doc. 48-1; Doc. 48-2; Doc. 48-3; Doc. 48-4; Doc. 48-5; Doc. 48-6; Doc. 48-7; Doc. 48-8; Doc. 48-9; Doc. 52.

In Ms. Ball's declaration, she states that she was "scared[,]" "confused[,]" "concerned," "shocked[,]" "frustrated[,]" "worried[,]" and "taunt[ed,]" by Zions's actions. *See* Doc. 48 ¶¶ 7, 12, 14, 18, 20, 29. She also states that she "lost a lot of sleep[,]" "suffered a great deal of distress[,]" and experienced "anxiety, frustration,

13

fear, embarrassment, sleepless nights, and damage to reputation" because of Zions's actions. *Id.* ¶¶ 40, 42, 47. In Ms. Mansell's declaration, she states that Ms. Ball "ha[d] trouble sleeping because of the inaccurate reporting of the Zions Debt Holdings account[,]" "lost a significant amount of weight due to the stress caused by this account reporting on her credit reports[,]" and "had trouble getting credit for her expenses and had to increasingly rely on [Ms. Mansell's] financial support to pay . . . bills which caused strain in her marriage." Doc. 52 ¶¶ 5–7. To compensate for this harm, Ms. Ball seeks "$8,000, $1,000 for each Fair Credit Reporting Act violation, and $1,000 for each Fair Debt Collecting Practices Act violation." Doc. 48 ¶ 48. She also seeks "[a]ctual damages in the amount of $35-45,000" and "[p]unitive damages in the amount of $70-90,000." *Id.*

The court finds that Ms. Ball's evidentiary submissions are insufficient to determine the amount of actual damages. Accordingly, the court turns to her request for statutory damages. *See Santos v. Healthcare Revenue Recovery Grp., LLC.*, 90 F.4th 1144, 1155 (11th Cir. 2024) (holding that the FCRA "does not require proof of actual damages" for an award of statutory damages). Given Ms. Ball's allegations that Zions "failed to conduct a reasonable investigation with respect to the information disputed by [Ms. Ball,]" "failed to review all relevant information

14

provided by the Credit Bureau[s] regarding [her] dispute[,]" "fail[ed] to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable[,]" and "verified the disputed information as accurate to the Credit Bureau[s,]" Doc. 1 ¶¶ 120–23, 144–47, the court **GRANTS** her request for statutory damages and determines that $1,000 is the appropriate amount. *See* 15 U.S.C. 1681n(a)(1)(A).

In addition, Ms. Ball seeks "[p]unitive damages in the amount of $70-90,000[.]" Doc. 48 ¶ 48. Punitive damages "are aimed at deterrence and retribution." *Williams v. First Advantage LNS Screening Sols. Inc*, 947 F.3d 735, 746 (11th Cir. 2020) (cleaned up). In determining the appropriate amount of punitive damages, the court must consider "(1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the harm or potential harm suffered by the plaintiff and his punitive damages award; and (3) the difference between the punitive damages award and any civil penalties authorized or imposed in comparable cases." *Id*. at 748 (cleaned up).

In determining reprehensibility, the court must consider whether "[1] the harm . . . was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [3] the target

15

of conduct had financial vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). All five factors need not be present to support a punitive damages award. *See Williams*, 947 F.3d at 750.

Ms. Ball alleges that "Zions knew or should have known that [she] . . . did not owe more than $35.97[,]" but failed to appropriately investigate the matter on two separate occasions, resulting in various harms, including emotional distress. Doc. 1 ¶¶ 66, 72, 92, 120–23, 144–47, 151, 156. The court finds these allegations sufficient to state a claim that Zions's conduct was repeated and evinced a reckless disregard for Ms. Ball, making it reprehensible. *See State Farm*, 538 U.S. at 419. However, the court finds that an award of $70-90,000, as requested by Ms. Ball, *see* Doc. 48 ¶ 48, is excessive relative to the harm she suffered, especially considering that it would constitute a seventy or ninety to one ratio of punitive damages to statutory damages. *See Williams*, 947 F.3d at 761. This Circuit has held that such ratios are unconstitutional, but has approved the use of a four to one ratio of compensatory damages to punitive damages in cases of reprehensible conduct. *See id.* at 763, 765–66 (holding that a ratio greater than four to one was inappropriate when the

16

"Defendant willfully violated the FCRA by knowingly or recklessly failing to follow reasonable procedures to assure the maximum possible accuracy of the information included in its criminal background reports, and specifically in its preparation of Plaintiff's two reports"). Accordingly, the court applies a four to one ratio and **GRANTS** Ms. Ball's request for punitive damages in the amount of $4,000.

The FDCPA allows for damages up to $1,000 per action. *See* 15 U.S.C. 1692k(a)(1)–(2)(A); *Harper v. Better Bus. Servs., Inc.*, 961 F.2d 1561, 1563 (11th Cir. 1992); *Brooks v. Caliber Home Loans, Inc.*, No. 8:17-CV-1247-T-27AEP, 2017 WL 3634606, at *2 (M.D. Fla. Aug. 22, 2017); *Isaac v. RMB, Inc.*, No. 2:12-CV-2030-TMP, 2014 WL 3566069, at *15 (N.D. Ala. July 18, 2014); *Thomas v. Pierce, Hamilton, & Stern, Inc.*, 967 F. Supp. 507, 510 (N.D. Ga. 1997). Ms. Ball sought actual damages and statutory damages but failed to substantiate the amount of her actual damages as explained above. *See supra* at 13–14. Accordingly, the court turns to her request for statutory damages.

In determining the amount of statutory damages, the court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). The court finds Ms. Ball's allegations that Zions "knew or

17

should have known that [Ms. Ball] . . . did not owe more than $35.97[,]" "implied [in its communications to Ms. Ball that] it ha[d] the right to collect . . . [$104.71] from [her]" and "the right to report this information to the Credit Reporting Agencies[,]" and "repeated[ly] attempt[ed] to collect an amount approximately three times the amount owed by [Ms. Ball,]" sufficiently frequent and persistent to warrant an award of the full amount of statutory damages. *See* Doc. 1 ¶¶ 66, 72, 73, 76, 92, 151–52, 155 (cleaned up); *see also* Doc. 48-1; Doc. 48-2; Doc. 48-6; Doc. 48-9. Accordingly, the court **GRANTS** Ms. Ball's request for statutory damages in the amount of $1,000.

Ms. Ball also seeks a "[d]eclaratory judgment that . . . Zions violated the FDCPA" and "[i]njunctive relief prohibiting . . . Zions['s] continued abusive debt collection conduct in violation of the FDCPA." Doc. 1 at 32. But "equitable relief is not available to an individual under the civil liability section of the [FDCPA]." *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982). Accordingly, the court **DENIES AS MOOT** Ms. Ball's request for declaratory and injunctive relief.

### D. Attorney's Fees and Costs

Finally, Ms. Ball seeks attorney's fees and costs. *See* Doc. 1 at 32. "[I]n the

18

case of any successful action to enforce" provisions of the FCRA and FDCPA, the plaintiff shall be entitled to "the costs of the action together with reasonable attorney's fee as determined by the court." 15 U.S.C. §§ 1681n(a)(3), 1692k(a)(3).

"The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (cleaned up). "The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Id.* (cleaned up).

The court has reviewed the declaration of Ms. Ball's attorney and supporting documentation and finds Ms. Ball's requested attorney's fees and costs reasonable. *See* Doc. 42-1 (providing that a Senior Associate expended 14.8 hours at a rate of $450 per hour, the Managing Partner expended 5.1 hours at a rate of $725 per hour, the paralegals expended 4.4 hours at a rate of $150 per hour, and costs incurred as to Zions, including the cost of a process server and attempted service, were $128.85). Accordingly, Ms. Ball's request for attorney's fees and costs is **GRANTED** in the amount of $11,146.35.

V.    **CONCLUSION**

For the reasons explained above, Ms. Ball's motion for default judgment, Doc. 42, is **GRANTED**, and judgment is **ENTERED** in favor of Ms. Ball and against Zions in the amount of $17,146.35. The motion for extension of time, Doc. 46, is **DENIED AS MOOT**.

**DONE** and **ORDERED** this 31st day of July, 2025.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE